Good morning. I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Wayne Partin. I'm going to try to reserve two minutes for rebuttal. Okay. Count it down. I plan to address three of the arguments that we've raised on appeal. First, the appeal waiver, then also the child pornography guideline issues, and then the Rule 32 violation. With respect to the appeal waiver that the government's invoking, it doesn't control. Under the law of this circuit, in the Gerace case, the court has to look at the facts of each case to determine what was reasonably understood by the parties. Here, the appeal waiver being invoked by the government was not raised by the government at the change-of-plea hearing. And then secondly, it was not raised by the district court either. And under this circuit's case law, particularly the Rios-Ortiz case, the Rule 11 change-of-plea colloquy is designed to ensure what the parties reasonably understood. So you place no significance on the plea agreement whatsoever. It was very clearly stated in the plea agreement that you don't question the – there's no ambiguity about that, is there? It's under the case law, Your Honor, because it was never addressed at the change-of-plea hearing. So you think there has to be an oral interaction between the judge and the defendant in order to satisfy Rule 11, I guess? Yes, Your Honor, because that's what Rule 11 is designed to ensure, what did the parties in particular defend it. Just so I understand, so your position is that if there is no specific focus or articulation by the judge during the plea allocution, so to speak, that, in fact, you have agreed to waive your rights to appeal in your plea agreement and to expressly say, here's what the plea agreement says. Is it your position that there cannot be a waiver? That's a broader principle than the facts of this case present. The facts here have an appeal waiver that was specifically discussed with my client regarding any objection to the guideline range. What if there was no discussion at all of any aspects of the plea waiver and the court just relied upon the plea agreement and received an acknowledgment from the defendant that he signed it, that it was voluntary, there's no questions about it, would that be a different case? It would have the same result because under those facts, Your Honor, the facts of that case, the appeal waiver was reviewed with the defendant, in this instance my client, by the district court. Otherwise, why have a change of plea hearing? You could just submit a plea agreement and that would satisfy the guilty plea requirement and Rule 11's requirement. But he did, the judge did ask him all sorts of questions, you know, to, you know, give the judge a comfort level that this was his plea agreement, that he understood it, that he read it. I guess I'm coming from the perspective of a district court judge because you can imagine I deal with these things all the time, and I just wonder whether or not that I've been committing reversible error by not specifically saying here exactly is what the waiver says in your plea agreement. Is that a requirement that a judge has to embrace? Under the law of the Ninth Circuit, yes. And again, under the – excuse me, Your Honor? The Ninth Circuit, you have to do that. And under the facts of this case where what the judge did arguably misinformed Mr. Parton when he summarized the plea agreement in a confusing manner at the end of the change of plea hearing if the plea agreement is going to control in and of itself. And there's nothing on the record that that aspect of the plea agreement was specifically reviewed with Mr. Parton. I understand there were general questions. Had he read the plea agreement? Did he understand it? But nothing specific to this issue. Were you there in front of the trial court or was it a different lawyer out of your office? No. I've been on this case from the get-go, Your Honor. So what are you, a potted plant? I mean, why don't you speak up? You say, listen, there are three separate appeal waivers and you mentioned only one, Your Honor. Your Honor, I went back and looked at the transcript. Frequently, if not almost always, and perhaps this is your practice, Judge Block, after the district court asks the prosecutor to summarize the essential terms of the plea agreement, which would include any appeal waiver, the district court judge, the magistrate, if the magistrate's taken the plea, will ask the defense counsel if they agree. That question was not asked in this case, so I was never asked if I agreed with what was being told to my client. But if you were paying attention, which I assume you were, if you were aware of what was in the plea agreement, and I assume you were, you had to have noticed that there were three provisions providing for waiver, only one of which was mentioned by the judge. I don't think the judge would have objected if you'd spoken up and said, well, there's a judge there, two more. The judge would have been grateful. Well, the record here is that the only waiver reviewed is not satisfied. I understand that, but I'm making a point that I think makes you a little uncomfortable. You might not have been doing a job by your client because you didn't speak up, or maybe worse, you were doing a job for your client knowing the judge had made a mistake and letting him make it. Yeah, I can't say that all the issues. And I won't say anything beyond that, because the last thing I want to do is suggest anything other than you dismissed it. But anyway, it puts us in a position of having to deal with a mistake that was easily remedied. And we have to deal, again, with the facts that are in the record. And all the sentencing issues, I don't think anybody anticipated those at the change of plea hearing, because what started as a drug case turned into, in essence, a child pornography sentence, which, unless there's more questions on the appeal waiver, I'll address those issues. Let's assume now, going forward, that the appeal waiver does not apply. So let's just address the merits, then, of all your contention. I'll start with the Rule 32 violation, Your Honor. What happened was Mr. Parton, I, on his behalf, objected to numerous paragraphs of the PSR, paragraphs 14, 15, 18, 19, 21, 22, 26, 28, and 29. Many of those dealt with allegations, assertions in the PSR, regarding Mr. Parton stealing drugs, pharmaceutical drugs, from a waste medical disposal facility where he worked and having them in five-gallon buckets at his house. There were no five-gallon buckets found at his house. So what's the relevance? I take it that you're right, that is to say that the five-gallon buckets, the judge was not entitled to conclude. What's the relevance of there being five-gallon buckets as distinct from tin pans or something else? A, the relevance is that the judge said when he imposed sentence, he, referring to Mr. Parton, stole multiple buckets, five-gallon buckets, as near as I can tell, full of pills. And then he later said that Mr. Parton sold those pills. At the change of plea hearing, we objected to any assertion that Mr. Parton sold pills. There was no acquiescence regarding five-gallon buckets. So the judge based the sentence, again a 10-year sentence, on facts that were never resolved by the district court and in fact were objected to throughout the hearing and throughout the process leading up to the hearing. And under this court's decision in Amaline en banc, the district court remains obligated to resolve the dispute before exercising its discretion under Booker. That is the controlling case law. Here, at excerpts of Record 165, the judge said, I'm going to exercise my sentencing discretion. That was prior to making this mistaken statements about the five-gallon buckets and selling of narcotics. He made that statement at ER 167. So that's a clear Rule 32 violation. I made ñ let me understand the sentence. My understanding is that he got two 10-year sentences running concurrently. Correct. One of them on the pills and the other one on the child porn. Correct. So if the sentence on the child porn is good, why is it harmful that he got a concurrent sentence for precisely the same time? Well, Rule 32 is stringently enforced. The judge based the sentence in part on the judge's own words explaining it on facts that were disputed and never resolved by the district court until after. I know, but I'm making a different point. If he was going to get 10 years on the child porn count, why does it matter that he also got 10 years concurrently on the pill count because the time he's going to serve is going to be the same, or am I missing something? Well, the judge explained the sentences together. He didn't say, I'm giving 10 years on the child porn count and here's why. I'm giving a concurrent 10 years on the pills count and here's why. He explained the sentence in an intertwined fashion, including relying on disputed facts that were never resolved. So it could be if the judge had actually resolved those facts and there were no 5-gallon buckets, Mr. Parton did not sell those pills, he may have given a lesser sentence on both. We don't know and we can't guess. But the charge on the pills was possession with intent to distribute? Yes. So actually selling them is not critical to the conviction. He pled possession with intent to distribute. If you go back, and this is in our brief at the change of plea hearing, Mr. Parton referenced vaguely that he didn't sell the pills. What he did was distribute them. In other words, give them to people. And that could be a difference in kind. I don't know how the district court judge would view that, but he said in imposing sentence in justifying Mr. Parton's sold pills, he said there were 5-gallon buckets and there wasn't sufficient evidence on those facts. I got it. Okay. And I know we're taking over time, but did you want to say something about the child porn? Yes. With respect to the child porn, and I've briefed this, I want to read an excerpt from Kaczynski, which is a case in the Ninth Circuit that's really bored into these computer forensic issues. And I'll point out what I'm sure you're aware of. That's a possession case, and this is an access case. Yes. Okay. And that's our major point, that for a lesser crime, accessing with intent to view, there's a low risk. But you're assuming it's a lesser crime. I mean, what does this make, whether you reduce it to some particular format, whether you look at it, the harm is the fact that these children are being exposed either way. I think it's debatable whether it's a lesser crime. Well, one involves surfing the Internet, period. That's the crime here. The other involves downloading, saving, manipulating, later viewing. But the victim in either case are these young children, really, whether you look at it, whether you download it. I mean, it's the same type of thing, isn't it? Yes. Our position is storing for later use is a difference in kind of offense conduct. In the Kijinsky case, it says, quote, also there is no doubt that he had accessed the web page that had those images somewhere upon it, whether he actually saw the images or not, end quote. That's one of our fundamental points here, and this is brief. There were over 42,000 index pages, index meaning that the computer had registered that somebody using the computer had gone to this particular page on pictureview.com. According to the government's expert, and we were not able to look at this child porn, but taking him at his word, approximately 1,800 of those images on the 52,000 pages were child porn. There were 21 images per page. If you do the math, that's less than one image per page is child porn. It's in the record that the images were cached, in other words, saved by the computer as one inch by one inch. So the district court held Mr. Parton responsible for seeing one inch by one inch images that were less than one image per page of those 52,000 pages. But the testimony as I read it was, from the expert, was that they showed up at the top of the page without scrolling down, I think 24 per page. What am I missing? He went to the page at a later date, not on the dates in question in terms of the user's access. He said there were anywhere from five to 24 images displayed. If you look at the forensic records, every index page retrieved, archived from the hard drive, had 21 images. So he was saying whether it was five images or 24 images, they all displayed on the page. Our point is that using the government's own numbers, there were over 52,000 pictureview.com images. The government asserted about 1,800 of them were child pornography. That means that on every page with 21 images that were one inch by one inch, there was less than one child pornography image. And the district court held him responsible for viewing every one of those. Well, now, the district judge, I think, held him for 600. Am I wrong? More than 600. You're correct, Your Honor, more than 600. And that just doesn't make sense. Particularly, you look at the case law of Kaczynski, which acknowledges you can look at a Web page and not see everything on that page. And here the child pornography is, in essence, buried in these pages, less than one image per page, yet he's held responsible for seeing at least one-third of them, if not all 1,800. And that just makes no sense. Okay. Thank you. Let's hear from the government, and we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Tim Roscoe, and I'm an assistant United States attorney in the Missoula, Montana, office. I am, unfortunately, still in the Missoula, Montana, office, and I need to apologize to the Court for that reality. I could have given you a trip out of the cold and into the rain, but you'll have to put up with it. Okay. Glad to have you. Thank you very much, and I appreciate the Court's indulgence on the videoconferencing. Your Honors, I'm happy to talk about whatever issues are of concern to the panel this morning. As it relates to the Rule 11. I have a couple. All right. Let's just satisfy me that I can have a comfort level based upon your expert Wegg's testimony that the defendant actually should be accountable for accessing with the intent to view over 600 of these images. I think I follow Wegg's testimony, but I'd like you to sort of walk me through it. Certainly, Your Honor. Another way of phrasing it, do you agree with the adversary's contention that there's only one image per page? It seems to me that Wegg did not say that, but I'd like to hear from you. I actually strongly disagree with that assertion, Your Honor, and I think what's important to note about the math is that Agent Wegg also testified that these series were progressive in nature. In other words, and I think it's fairly common in the child pornography context, that a series starts out with non-illicit, non-pornographic images of a child fully clothed and works gradually to a place where the image becomes pornographic in nature. That was the nature of the series that were on the pages that Agent Wegg was able to view. So I don't think it's fair to say that there's one of every 21 on a page would be pornographic. I think it would be more accurate to say that if you brought up page one, there would be 21 images that were not pornographic, and whatever page you needed to get to to get to the pornographic images, they would all become pornographic in nature. And his testimony about the progressive nature of the series is in the record. How do we get to 600? I also think it's important... How do we get to 600? Well, Judge, there was no... I'm sorry. I keep cutting you off. I apologize. There was no dispute in the record that there are between 1,600 and 1,700 images of child pornography in the various locations on the system. So there wasn't a dispute about the number. It was just about how many they think he actually saw. So how do we get to 600 that he actually saw? And that, Your Honor, dovetails with Judge Fletcher's question and his understanding, and I think it's a good one, of Agent Wade's testimony that all of the images, however many appeared on the screen, and Agent Wade testified that it would vary between five and up to as many as 24, but he said no matter how many appeared on the screen, they were all at the top of the screen. I could see all of them without scrolling down the page in any way. The only scrolling that I had to do was to get subscription information about how to actually join and pay for a membership on the site, but however many images, illicit or not, appeared on the screen were on the top of the page and Agent Wade could view them. Right, but let's assume that there were only five that were illicit. How do we get to 600? Well, there was a total of between 1,600 and 1,700 illicit images that were on the computer. But that doesn't necessarily mean that those were all seen by the defendant. They were in the cache, I guess, and, you know, they were not necessarily visible on the thumbnails, were they? Well, they were the only way that they could have cached, and both Agent Wade and the defense expert agreed the only way the images could end up in the cache is if they were loaded on the Web page at some point on the computer, and Agent Wade said the only way you could see the images if the page was loaded is you could see all of them on each page. So if the only way you could cache it was by loading it and every time you loaded it you saw every image that appeared, whether it was 5 or 24, then that's how the 1,600 images got there. The other thing that's important from our perspective as it relates to that point is the fact that that's exactly what Mr. Parton was searching for. On at least one occasion he does a Google search for the term naked preteen. He also visited the nudist... They had to be seen. They had to be viewed first. They had to be thumbnails. Is that how this works out? They had to be seen. That is how it works, Judge. They don't go into the cache automatically. They had to be seen first by the defendant. I'm a little confused about that. On these facts, Judge, that is correct. They have to be. Now, depending on the way a Web site is constructed, they wouldn't necessarily have to be seen because you could have a Web page that you bring up the page and you can only see a few images and you have to scroll down to reach more. That was not the instance in this case. The way that these pages were formulated, because you could see all the images up there, every time he opened a page you could see all the images and every one of those images was cached, and it couldn't be cached if the page wasn't loaded. So just to make sure I understand what you just said or what the expert has said is that in order for them to get cached or then to move on to the so-called unallocated space, those pictures had to have shown up on the screen of his computer monitor at some point. Is that correct? That is correct. Yeah. And he might not have been looking, but they were on the screen of his monitor. That is correct. And he didn't have to scroll down to see any additional images. Gotcha. Okay. I'd like to ask you a few other questions, if I may. There was a 5K1 agreement here. There was a cooperation agreement, from what I understand. That is correct. And the judge said that he was going to take that into consideration. I guess I'm confused. He gave him the maximum sentence under the law. I think it was 10 years, correct? How did that 5K1 interact with that? I don't understand what so-called break the judge gave him because of the 5K1, if he gave him the maximum sentence. I'm a little confused about that. That's a fair question, Judge, and I think that sort of dovetails with the interplay between the drug conviction and the child pornography conviction because the guideline range was 140 to 175 months. And because of the nature of the drug charge, Mr. Parton could actually have received a sentence under that crime of conviction of up to 20 years. So although the judge was restricted in giving a sentence beyond 120 months for the child pornography conviction, he did have the discretion to sentence Mr. Parton within the original guideline range of 140 to 175 months for the drug conviction. Yes, but the way I read the record is that the focus seemed to be entirely on the child pornography dynamics. The government agreed that there was going to be a six base offense level on the drug charge, and it didn't seem to have anything to do at all with the focus of the sentence. If that's the case, I just wonder what place the 5K1 had to play in all of this and whether or not the judge may have, you know, considered what he said about the five cans or all of that, you know, comments he made in deciding how to sentence him. He didn't give him any 5K1 consideration, and he talked about the drug dynamics. And how do we know that he did not really consider those part of the PRS that was the pre-sentence report, PSR, that was challenged? How do we know that he didn't consider that in his sentence? Maybe he should go back and with the instructions that he should not consider that and reevaluate this, especially in the context of this 5K1 agreement, which he gave nothing for. Well, Your Honor, it's the government's perspective that the judge was entitled to consider the fact of the drug conviction. I think that I've maybe failed to appreciate some of the nuances of opposing counsel's arguments. You had a contested factual dynamic, and that was clearly presented during the course of these proceedings. The judge considered or he articulated that he was considering those facts which were contested. He did not give him any consideration for his 5K1 agreement, not at all. He sentenced him to the maximum for the child pornography. And I know he gave concurrent time, but that seemed to me almost like a mechanical type of thing. He had to provide some sentence, and it's easy enough to say it's 10 years or we give you 10 years on each count and that's, you know, sufficient. But I don't have a full content level that, you know, that did not enter into his 3553A calculation when he talked about the nature of the crimes. I mean, I just want you to tell me how I can feel comfortable about that. I think one thing that we would focus on is that there was a contested issue as it related to the drug amount specifically. But Mr. Parton did plead guilty to a conspiracy to distribute controlled substances. He admitted that he was working at the facility from which he stole the controlled substances. And I think your question really ultimately sort of dovetails to the entire scope of the record. This was a sentencing hearing that was close to, if not in excess of, five hours. And when you look at the entire scope of the record, it's clear, at least from the government's perspective, that the court's concern was really about a man in his mid-50s with an alarming criminal history that seems to be becoming increasingly more violent. And the sentence is really reflective of a complete and thorough look at everything that was in the record and not just specific conduct, contested or otherwise, that was a part of the drug conviction. Well, wasn't most of the five hours devoted to the child pornography dynamics and Agent Wegg's testimony and the defendant's experts, wasn't that the focus of the five hours? There was really nothing mentioned during the five hours, if I recall, about the drug dynamics. That was pretty much awash. Nobody was really paying much attention to that. Am I reading it wrong? No, Your Honor. I think you're reading it accurately in terms of the bulk of the substance of the time that was spent on those issues. And I think that relates to the fact that the government conceded the drug issue, which was probably error on my part, frankly, to concede that issue. But we did, frankly, to save time because it was going to get lost in the guideline calculation regardless. But it resurfaced when the judge really started to talk about the underlying drug dynamics of this type of thing. And, look, the judge may have had the right to do that. I mean, under 3553A, we really carefully have to weigh the nature and circumstances of the crimes against the characteristics of the defendant. But in doing that, it seemed that the judge did consider the nature and circumstances of the drug crime in ways which were possibly contested. And I guess that troubles me to some extent, especially, once again, in light of the fact that the judge gave no considerations of practical matter to the 5K1 dynamics. You know, maybe I'm wrong in reading it that way, but that gives me some pause. I think all I could say, Judge, is that as it relates to sort of the entirety of the proceeding and the sort of thoughtful comments the judge put on the record about the things he had read and the things he had considered, that when you look at the sum total of everything that occurred that day, it's difficult to say that the sentence wasn't reasonable in this case. Okay. So far we've been talking with you on the assumption that these are appealable issues. Can we go back to the appeal waiver? Were you there in front of the trial judge? I was not there for the change of plea hearing. So someone else in your office was? Yes, Your Honor. Well, I'll say this to you as the transmitter to the person who was there. I've got the same comment to the assistant U.S. attorney who was there, as I do for the defense attorney. I assume that he or she, was it a man or a woman? It was actually a woman, AUSA, supervising one of our clinical interns, Your Honor. Okay. Well, I'll say they, I guess. I guess we've got a couple, but we had an AUSA there in the room. Obviously, they, I mean, you guys drafted the plea agreement. So I'm assuming that the people from your office there in the room knew what was in the plea agreement. I assume further that they were paying attention to the judge. And if they were paying attention, they had to notice that there were three separate waivers in the plea agreement. The judge mentions only one of them. So what are they, potted plants? Same question. Why didn't they say something? Your Honor, that's a very fair question and very fair assumptions. There's no doubt that the government needed to do a better job in this case at the outset. We were given the opportunity at the outset of every one of these hearings, as Mr. Rhodes referenced, to summarize the important terms in the plea agreement. And we didn't hit a home run in that regard in this case. There's no question about it. Well, are you willing simply then to say that the plea agreement, that the waiver doesn't apply, given the, I mean, you were fully in control of making sure the judge said what he was supposed to say, and you didn't do it. It's difficult for me, Judge, to dispute that result if that's the direction the court chooses to go, to the extent there's frustration on behalf of the government. No, don't say we're not going to object if that's what you decide. I'm asking you a different question. Are you willing to concede for purposes of this case that the plea waiver doesn't apply? I am not, Judge, only because I don't think there's any actual indication in the record that there was any confusion. And if it's a strict Rule 11 problem, then I guess it is what it is. But the other questions that the judge asked, and Judge Block hit on some of those questions, made it clear that the defendant did not have any questions about the plea agreement, that there was no confusion at all. No, I mean, I read what the judge said. Have you read it? And he said, yes, I read every bit of it. He initials every page. It's just the trouble is the judge is supposed to recite the key provisions, and he recited one and left out two. Okay. Okay. Any further argument or any further questions from the bench? No. Okay. Thanks very much. Thank you very much. I appreciate it. Now, we've taken defensively over time, but if you'd like to respond, let's put two minutes on the clock. Thank you, Your Honor. Starting again with the appeal waiver. The government's invoking the 5K substantial assistance appeal waiver. There's law in this circuit, the De La Fuente case. There's law from the Second Circuit, the Goodman case, that where there's no benefit to the substantial assistance motion, then that's an invalid appeal waiver, and that's the circumstance here as summarized by Judge Block. The government's response to that question in which the government started talking about, well, he could have gotten a higher sentence for the drug case, Judge Fletcher, that goes to your question that when the judge was imposing sentence, he was really sentencing Mr. Parton for a child porn offense, which I disagree with. He was sentencing for both, as explained by his own words. But the government's response to the 5K issue and the fact that Mr. Parton really didn't get any benefit proved that point. The government said, well, he could have gotten more time for the drug case, but he got the maximum sentence for the child porn case, showing that the judge relied on both cases in imposing sentence, which, again, is best proved by the judge's own words. So, sir, in your view, none of the plea waiver provisions was even triggered? Is that what you're saying to me? We've argued in our brief that the 5K provision wasn't triggered because he received no benefit. He received the maximum sentence for the child porn offense, 10 years. That's what he got. So as Judge Block pointed out, he really didn't get any benefit. I'm sure he didn't. I know he feels like he didn't get any benefit. And do you have more questions on that, Your Honor? Also, with respect to the idea there was no confusion regarding the appeal waiver, which was one of the last things the government said, there was confusion. The court and the government only summarized one position, one portion of the appeal waiver at the change of plea hearing, and then the last thing the court said was you can appeal if the sentence exceeds the guideline range. I really don't know where that came from. That just confounded the confusion. Yeah, no, it was just wrong. And with respect to the child pornography issue, the government pointed out on one occasion a search term was found for child pornography. The whole hard drive of the computer was analyzed. There was one search term for child pornography, and the child pornography images were buried among tens of thousands of other images. And Agent Wag testified, if you went to these groups and browsed each news group sufficiently, you could find child pornography. That's a direct quote from ER 106-107, again proving the lack of clear and convincing evidence that Mr. Parton actually viewed each of the images that he was held responsible for. So in sum, Your Honor, we believe there is no valid appeal waiver. There's a Rule 32 violation. And also, if this case is remanded, we'd ask the court to address the child pornography issue in the first instance, or maybe we can go back and relitigate that issue to the district court, because obviously that's a major issue in this case, the appeal waiver issue and the Rule 32 violation aside. Yeah, okay. Now, I understand that you just summed up, but I just want to give you my sense of where this case is. If we were to agree with you that the appeal waiver is invalid, so we address this on the merits, if we were to agree with you that there's been a Rule 32 violation with respect to the pills in the buckets and whether or not he sold them or merely possessed them for purposes of distribution, but if we were to conclude that there's no problem with respect to the child porn sentence, I don't know that we're going to end up in any different place from where we are right now. First, Your Honor, Rule 32 is stringently enforced. That's not the question I asked you. Is there any realistic possibility that we're going to end up with anything other than a 10-year sentence if we say that the child porn sentence was proper? Yes, Your Honor.  Second, I can speak from my own personal experience. When I've had cases remanded for resentencing, when my clients can return before the court and their allocution can speak to the prison sentence that they received and what they've learned between the interim of the initial sentencing and the remand and the actual resentencing, overwhelmingly, my clients have received lesser sentence. And I don't think it has anything to do with what I do at the sentencing hearing. It's a matter of the defendant, who the judge has seen twice before in 2012 and 2013, coming back at a later date and speaking from their heart about what they've learned, what the prison experience has taught them. Somebody like Mr. Parton, who's in his 50s, is going to start thinking about the rest of his life and the end of his life, and so I 100 percent believe it can make a difference. Okay. Thank you very much. Thank you, Your Honor, and thank you for the extra time. And thank both sides for their arguments. United States v. Parton is now submitted for decision.
judges: Block, Trott, Fletcher